IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FRANK INCHINGOLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 06-CV-256-WDS |
| ) | |
| AB INITIO SOFTWARE ) | |
| CORPORATION and ) | |
| SHERYL HANDLER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. Rules 9(b) and 12(b)(6) (Doc. 11), to which plaintiff has responded (Doc. 15), and defendants have replied (Doc. 20).

## BACKGROUND

On March 28, 2006, plaintiff filed an eight count complaint against his employer, Ab Initio Software Corporation, and its Chief Executive Officer, Sheryl Handler. The complaint alleges unjust enrichment, breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, tortious interference, conversion, and intentional misrepresentation, and also seeks a declaratory judgment that plaintiff is the sole inventor of United States Patent Application Nos. 10/795,374 and 10/796,612, and owner of the Dynamic Process Manager Software ("DPM Software"). Plaintiff's complaint seeks rescission of the employment agreement, damages and permanent injunctive relief.

Plaintiff has been employed defendant by Ab Initio since March of 2000.[1] Ab Initio is "a computer based technology company which offers a software framework for highly scalable applications that utilizes parallel hardware architectures." (Compl., ¶ 3).

**The DPM Software**

Plaintiff alleges that he invented the DPM software prior to his employment at Ab Initio and he owned all rights in the software. He asserts that he treated the software as proprietary, confidential and as a trade secret. The DPM Software allows users "to manage all of the separate building blocks as one integrated system. . . . The DPM Software is unique because it brings recovery and parallelism of these building blocks from the individual level to the system level." (Compl., ¶¶ 16-17).

**The Employment Agreement**

Plaintiff alleges that on or about February 15, 2000, he entered into an employment agreement with defendants which provided that he would receive 5,000 Ab Initio stock options as consideration for assigning his rights in the DPM Software to Ab Initio and 5,000 Ab Initio stock options and a salary as consideration for his employment at Ab Initio. (Compl., ¶ 21). The options as consideration for the software rights were to vest immediately, and those as consideration for his employment would vest at 25 percent per year over the course of four years. (Compl., ¶ 28). He further claims that defendant Handler and numerous other Ab Initio officers and employees estimated the stock options at the time to be worth $50.00 to $120.00 per share, for a total value of $500,000 to $1,200,000. (Compl., ¶ 23). The exercise price, according to

---

[1]In his response to defendants' motion, plaintiff informs the Court that since filing his complaint he has been discharged by Ab Initio. This fact, as well as additional facts related in his response as to plaintiff's bonuses, work performance, etc., are irrelevant to the analysis of the matter presently before the Court, and, therefore, will not be considered.

plaintiff, was $6.25 per option and his 10,000 options were not to expire until March 12, 2010.

Plaintiff alleges that he was a model employee while working for Ab Initio. (Compl., ¶¶ 39-48).

**The Stock Options**

In his complaint, plaintiff alleges that the 10,000 stock options promised in his employment agreement were "a sham" and "never existed." (Compl., ¶¶ 54 & 65-67). Plaintiff does not allege that he ever tried to exercise the options, but does claim that another Ab Initio employee attempted to exercise his vested options and was told by Ab Initio that he could not do so. (Compl., ¶ 57).

Plaintiff alleges that a reverse stock split occurred and defendant Handler informed plaintiff that his stock options had been reduced to a fraction of a share. (Compl., ¶¶ 56-58). Plaintiff further claims that Handler told him that the company does not issue fractional shares, thus his stock options had effectively been eliminated. (Compl., ¶¶ 58-59).

Plaintiff then claims that the afore-mentioned reverse stock split "was fictionalized to cover up the fact that no stock options ever existed." (Compl., ¶ 70). He then alleges that defendants, "feeling remorse[ful] over the sham options, . . . indicated that they would pay anyone who was informed that they had been granted Ab Initio options (when in fact such options never existed) $10 per option." (Compl., ¶ 71). Plaintiff further alleges that on March 15, 2005, Ab Initio automatically deposited monies into his account, consisting of his bonus and a portion of the $10 per share option payoff (the amount deposited was less than $100,000, which would be the payoff amount for all of his 10,000 options). Plaintiff states he has not accepted this unilateral payment and has offered it back to Ab Initio. (Compl., ¶¶ 75-81).

**The Counts**

In Count I, plaintiff alleges unjust enrichment against both defendants, claiming that he reasonably expected the offered stock options to be worth between $500,000 and $1,200,000. Since Ab Initio has now offered him $10 per option, he will only get $100,000, thus he alleges the defendants are unjustly enriched by receiving the DPM Software and plaintiff's services for only $100,000 (plus salary and bonuses over the years).

Count II alleges breach of contract against both defendants in that the promised stock options never existed. Count III alleges that defendants breached the implied covenant of good faith and fair dealing contained in plaintiff's employment agreement.

Count IV alleges promissory estoppel against both defendants, claiming that defendants' promise of stock options in return for the DPM software and plaintiff's services induced action or forbearance of a definite and substantial character by plaintiff. To avoid injustice, plaintiff claims defendants' promise of fair compensation must be enforced, which he equates to the estimates of the stock's worth which were presented to him before he entered into the employment agreement with defendants.

Count V is against defendant Handler only, and alleges tortious interference with the employment agreement between plaintiff and Ab Initio. He claims Handler interfered with Ab Initio's performance of the contract by unilaterally conducting a reverse stock split, thereby eliminating Ab Initio's consideration for plaintiff's employment and DPM software, or making it impossible for plaintiff to exercise his stock options.

Count VI alleges conversion of the DPM software by both defendants.

Count VII alleges intentional misrepresentation by both defendants in regards to the

existence and/or value of the proffered stock options, as well as certain terms of plaintiff's employment at Ab Initio.

Count VIII seeks a declaratory judgment stating that plaintiff is the sole inventor of U.S. Patent Application Nos. 10/795,374 and 10/796,612 and that he has all legal ownership rights and interests in the DPM software, its improvements and the patent applications claiming the DPM software and its improvements.

**Defendants' Motion**

In their motion to dismiss (Doc. 11), defendants claim as follows:

1. All Counts of the Complaint are based on allegations of misrepresentation surrounding alleged estimates of Ab Initio's stock value, which constitute statements of opinion, and are not actionable statements as a matter of law.

2. All Counts of the Complaint also sound in fraud, and are therefore subject to the stricter pleading requirements of Fed. R. Civ. P. 9(b), which the Complaint fails to meet as a matter of law.

3. The equitable claims (Counts I, IV and VI) are barred as a matter of law by the written agreements between the parties.

4. The contract claims (Counts II–III) fail as a matter of law because the plaintiff fails to allege breach.

5. The tortious interference with a contract claim (Count V) fails as a matter of law because a corporation cannot interfere with its own contract, as alleged.

6. The inventorship and ownership claim (Count VIII) fails as a matter of law as it is barred by the terms of the written agreement between the parties.

**STANDARD**

Dismissal is appropriate only if it appears beyond a doubt that no relief may be granted under any set of facts that could be proved consistent with the allegations in the complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Veazey v. Commc'ns & Cable of Chi., Inc.*, 194 F.3d 850, 854 (7th Cir. 1999). In other words, in order to prevail upon a motion to dismiss, the defendant must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence. *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all well-pleaded allegations as true and construe the complaint in the light most favorable to the plaintiff. *See Conley*, 355 U.S. at 45-46; *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). However, when plaintiff alleges fraudulent activity, the complaint must state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). "The plaintiff must identify particular statements and actions and specify why they are fraudulent. Conclusory allegations do not satisfy the requirements of Rule 9(b) and subject the pleader to dismissal." *Veal v. First Am. Sav. Bank*, 914 F.2d 909, 913 (7th Cir. 1990) (internal citations omitted).

**ANALYSIS**

**Count I**

Count I alleges unjust enrichment against both defendants. To state a cause of action of unjust enrichment, Illinois law requires that "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the

benefit violates the fundamental principles of justice, equity, and good conscience."[2] *Johnson v. Gudmundsson*, 35 F.3d 1104, 1114 (7th Cir. 1994) (internal citations omitted).

Plaintiff alleges in his complaint that he began working for defendants with the reasonable expectation, based on alleged valuation estimates by defendants, that he would receive options to purchase 10,000 shares of stock worth between $500,000 and $1,200,000 at the time of the agreement. He further alleges that the options "either (a) never existed, (b) were eliminated as a result of an unlawful stock split or (c) were impossible to exercise;" therefore, he never received full compensation for his employment. By continuing to use the DPM software and plaintiff's services for financial gain, plaintiff claims defendants have been unjustly enriched.

Though plaintiff's complaint is rambling and at times inconsistent, the federal rules do allow for pleading in the alternative, and viewing the complaint in the light most favorable to plaintiff, as it must. the Court **FINDS** Count I sufficient to survive a motion to dismiss, even under the heightened pleading standards of Rule 9(b). Defendant's motion to dismiss as to Count I is **DENIED** on all grounds raised.

**Count II**

Count II of plaintiff's complaint alleges breach of contract, in that defendants' refusal and failure to tender, or the impossibility of plaintiff to exercise, the 10,000 stock options promised to him in his employment agreement, constitutes a breach of contract. However, plaintiff also alleges that defendants offered to pay him $10 per option; thus if plaintiff has a

---

[2] When neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits. *Wood v. Mid-Valley, Inc.,* 942 F.2d 425 (7th Cir. 1991). Accordingly, the Court will apply Illinois substantive law in arriving at its decision.

claim for breach of contract related to the stock options, it can only be because the company did not offer to pay him the amount he originally expected. Plaintiff also alleges breach in that he did not receive other benefits promised to him, i.e., a close working relationship with defendant Handler. It may be true that the stock option value estimates plaintiff received prior to accepting his employment agreement, and other promises of employment conditions, never became part of the contract; however, that is a factual argument and not a pleadings argument and is therefore not grounds for dismissal at this time. The Court **FINDS** that this count does not sound in fraud, and is therefore not subject to the heightened pleading standards of Rule 9(b). Piecing together various parts of plaintiff's complaint, the Court **FURTHER FINDS** that defendants have failed to show that no relief may be granted for breach of contract under any set of facts that could be proved consistent with the allegations in the complaint. *See Conley*, 355 U.S. at 45-46. Accordingly, defendants' motion to dismiss Count II is **DENIED** on all grounds raised.

## Count III

Count III alleges that defendants breached their implied covenant of good faith and fair dealing. Defendants argue this count should be dismissed because it sounds in fraud and does not meet the requirements of Rule 9(b), and also because plaintiff cannot state a claim under this theory based on Ab Initio's reverse stock split and cash out fractional shares. Defendants argue that the "implied covenant of good faith and fair dealing may not be utilized to vary the terms of an agreement." *McDonnell v. Allstate Life Ins. Co.*, 2004 U.S. Dist. LEXIS 21822 (D. Ill. 2004).

"Outside the realm of insurance, Illinois courts do not recognize a breach of the implied covenant of good faith and fair dealing, a plaintiff must include it within a breach of contract claim." *Pierce Packaging Co., v. Atlas Copco Wagner, Inc*., 2003 WL 22287390 at *1 (N.D. Ill.

2003) (*citing Guardino v. Chrysler Corp.*, 691 N.E.2d 787 (Ill. App. Ct. 1998); *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624 (7th Cir. 2002)). The covenant is not an independent source of duties for the parties. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436 (7th Cir. 1992). Any evidence of defendant's breach of the covenant should have been encompassed in the claim of breach of contract. *Cobb-Alvarez v. Union Pacific Corp.*, 962 F. Supp. 1049, 1055 (N.D. Ill. 1997).

Because Count III alleges simply "breach of implied covenant of good faith and fair dealing," and is entirely distinct from Count II's breach of contract claim, it is insufficient as a matter of law. Defendants' motion to dismiss Count III is **GRANTED**. Count III is, therefore, **DISMISSED** pursuant to Fed. R. Civ. P. Rule 12(b)(6).

## Count IV

Count IV contains a claim of promissory estoppel. Defendants argue that the claim should be dismissed because plaintiff has not alleged reasonable and detrimental reliance. In fact, plaintiff does make those allegations in his complaint, though they are not all neatly contained within the confines of Count IV.

The standard for surviving a motion to dismiss based on insufficient pleadings is extremely low. Under the notice pleading standard observed by the federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action . . .'" *Sanjuan v. Am. Bd. Of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

> The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. However, any conclusions pled must 'provide the defendant with at least minimal notice of the claim,' and the plaintiff cannot satisfy federal pleading requirements merely 'by attaching bare legal conclusions to narrated facts which fail to outline the basis of [his] claim.' The Seventh Circuit has explained that

9

'[o]ne pleads his 'claim for relief' by briefly describing the events.'

*Tessendorf v. Edward Hines Lumber Co.*, 393 F.Supp.2d 686, 689-90 (N.D. Ill. 2005) (internal citations omitted).

Because of the liberal notice pleading standards, plaintiff's claim is sufficient at this stage in the lawsuit. Defendants' motion to dismiss Count IV is **DENIED**.

**Count V**

Count V alleges tortious interference with a contract by defendant Handler. Taking all well-plead allegations as true, and construing the complaint in the light most favorable to plaintiff, this count alleges that Handler, acting as CEO of the company, initiated a reverse stock split. This reverse stock split effectively nullified plaintiff's stock options, thus making it impossible for Ab Initio to perform its part of the employment agreement. Plaintiff claims this amounts to tortious interference. Defendants argue that since Handler was acting as CEO, her actions are to be construed as the corporation's actions, and the corporation cannot interfere with its own contract.

"Corporate officers are not outsiders intermeddling maliciously in the business affairs of the corporation. They are privileged to act on behalf of their corporations, using their business judgment and discretion." *George A. Fuller Co., a Div. of Northrop Corp., v. Chi. College of Osteopathic Medicine*, 719 F.2d 1326, 1333 (7th Cir. 1983) (internal citations omitted). To state a cause of action against corporate officers for interfering with their corporate principal's contract, plaintiff must allege facts which, if true, establish that officers induced breach to further their personal goals or injure another party to the contract, ***and*** acted contrary to the best interest of the corporation. *Id.*

Plaintiff does allege that defendant Handler acted to further her own personal goals by allowing her to be the sole shareholder of the corporation. However, he does not allege that she acted contrary to the best interests of the corporation. In fact, plaintiff alleges that the company continues to operate successfully. Thus, the complaint fails to meet Illinois standards for bringing a cause of action for tortious interference against defendant Handler. Accordingly, defendants' motion to dismiss Count V is **GRANTED** and Count V is **DISMISSED**.

**Count VI**

Count VI alleges conversion of the DPM software. Defendants argue the conversion claim should be dismissed because plaintiff cannot demonstrate a right to the property allegedly converted, and because he has not affirmatively demanded the return of the property.

Defendants' argument that plaintiff cannot demonstrate a right to the DPM software because the employment agreement between the parties states that defendants have all rights to the software is unpersuasive because that very agreement is what plaintiff is now contesting. Their second argument, that the complaint is insufficient because plaintiff does not allege that he affirmatively demanded return of the property, requires deeper analysis.[3]

Under Illinois law, to succeed on a claim of conversion, a plaintiff must prove tortious conversion of the chattel, a right to property in it, and a right to immediate possession which is absolute. *Nat'l Union Fire Ins. Co. Of Pittsburgh, Pa. v. Wilkins-Lowe & Co., Inc.*, 29 F.3d 337, 340 (7th Cir. 1994). Additionally, plaintiff must demonstrate that he demanded return of the property, or present objective facts proving futility of such a request, before he is entitled to bring suit for conversion. Failure to do so is grounds for dismissal. *Runnemede Owners, Inc. v.*

---

[3]Of course, at a later date defendants may contest whether the *facts* of the case support any of plaintiff's claims; however, at this point defendants may only attack the pleadings.

*Crest Mortg. Corp.*, 861 F.2d 1053, 1060 (7th Cir. 1988).

Nowhere in the complaint does plaintiff allege that he has demanded that defendants hand over the DPM software and all rights associated therewith, nor does he demonstrate why such a demand would be futile. Accordingly, defendants' motion to dismiss Count VI is **GRANTED**. Count VI is **DISMISSED**.

**Count VII**

Count VII alleges intentional misrepresentation. Defendants argue that the count should be dismissed because it does not meet the heightened pleading standards for claims that allege fraudulent activity, and because a cause of action for misrepresentation cannot be based upon a statement of opinion, and more specifically, cannot be based upon estimates as to stock value.

The Court agrees that Count VII sounds in fraud, and is therefore subject to the stricter pleading requirements of Fed. R. Civ. P. Rule 9(b). That rule requires simply that the facts be plead with enough particularity to give "adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading." *Lachmund v. ADM Invetor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999).

Here, plaintiff specifically alleges nine actions taken by one or both defendants which he argues constitute fraudulent activity:

> (a) offering [plaintiff] 10,000 stock options and failing to tell [him] that the 10,000 stock options did not exist;
>
> (b) offering [plaintiff] 10,000 stock options with no intention of ever actually tendering them;
>
> (c) assigning a value to the 10,000 options at the time of the agreement of between $500,000 and $1,200,000[,] knowing that no such value would ever be tendered;

12

>    (d) CEO Handler's express valuation of the 10,000 options at the time of the agreement at $800,000 knowing that no such value would ever be tendered;
>
>    (e) CEO Handler's statements that investors were currently willing to pay $80 per share at the time plaintiff accepted employment at Ab Initio and at the time plaintiff assigned the DPM software to Ab Initio;
>
>    (f) offering plaintiff any resources he needed to develop the DPM software for market with no intention of providing such assistance;
>
>    (g) informing plaintiff that CEO Handler would be fully accessible to him with no intention of providing such access;
>
>    (h) informing [plaintiff]that the DPM software would be developed with him as an owner of shares with no intention of keeping this promise;
>
>    (i) informing [plaintiff] that the options would be exercisable through March 12, 2010[;] and otherwise making misrepresentations to [plaintiff].

(Compl., ¶126).

As stated above, defendants argue that paragraphs (c) and (d) cannot provide an actionable basis for misrepresentation because they are based on opinions and estimates as to stock value. Indeed, plaintiff repeatedly refers to the stock option valuations as "estimates" when describing the events that led to his employment at Ab Initio, as well as when calculating his alleged damages. (*See* Compl., ¶¶ 23-25, 51, 72-73, 87). Further, defendants argue that paragraph (e), which states that Handler told plaintiff that investors were currently willing to pay $80 per share at the time plaintiff accepted employment at Ab Initio, and assigned the DPM software to Ab Initio (which was in 2000), cannot provide a basis for a misrepresentation claim because plaintiff has not alleged that said statement was actually false.

The elements of fraudulent or intentional misrepresentation are (1) a false statement of

13

material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Bauer v. Giannis*, 834 N.E.2d 952, 957 (Ill. Ct. App. 2005); *Smith v. Kurtzman*, 531 N.E.2d 885, 889 (Ill. Ct. App. 1988).

An incorrect prediction of stock value does not provide a legal basis for misrepresentation claim. Legal hornbooks recognize that a party does not have a right to rely on a prediction of future events. WILLIAM LLOYD PROSSER & PAGE KEETON, PROSSER & KEETON ON THE LAW OF TORTS § 109 (5th ed. 1984) *at* 762. As so eloquently stated by another district court, "[o]pinions as to the current value of a stock or predictions as to future stock prices are notoriously unreliable. A lawsuit based upon such opinions or predictions is the equivalent of suing the weatherman when one's picnic is rained out." *Next Century Commc'ns Corp. v. Ellis*, 214 F. Supp.2d 1366, 1371 (N.D. Ga. 2002).

Further, as to Handler's alleged statements that investors were willing to pay $80 per share (in 2000), plaintiff has not made any allegations as to the falsity of this claim. Nor does the Court see how an investor's actions in 2000 could be justifiably relied on to predict a stock's current value.

Accordingly, defendants' motion to dismiss Count VII is **GRANTED** as it relates to misrepresentation claims centered around alleged estimates of the stock options' value or what investors were willing to pay per share in 2000 (paragraphs (c), (d) and (e) contained in Count VII).

As for the remaining allegations of Count VII, The Court **FINDS** that plaintiff's

complaint, when read in its entirety, clearly meets the requirements set forth in Rule 9(b). Plaintiff's motion to dismiss Count VII, as it relates to paragraphs (a), (b), and (f) through (i) contained therein, is **DENIED**.

**Count VIII**

Count VIII seeks a declaratory judgment stating that plaintiff is the sole inventor of U.S. Patent Application Nos. 10/795,374 and 10/796,612, as well as a declaration stating he has all legal ownership rights and interests in the DPM software, its improvements and any associated patent applications. Defendants argue that this count should be dismissed because plaintiff developed the software while employed by defendants, and plaintiff assigned any rights in the product to defendants in his employment agreement. However, plaintiff alleges that he invented the software before beginning his employment with defendants. Further, plaintiff now contests the validity of his employment agreement. Defendants have not shown that the facts alleged in Count VIII are without legal consequence. Accordingly, defendants' motion to dismiss Count VIII is **DENIED** on all grounds raised.

## CONCLUSION

Defendants' motion to dismiss (Doc. 11) is **GRANTED** in part and **DENIED** in part. Defendants' motion to dismiss Counts I, II, IV, and VIII is **DENIED**. Defendants' motion to dismiss Counts III, V and VI is **GRANTED**, and those Counts are hereby **DISMISSED**. Defendants' motion to dismiss Count VII is **GRANTED** as to any misrepresentation claim based on stock option value predictions and estimates of current stock worth (¶¶ (c), (d) and (e) of Count VII) and denied as to all remaining claims (¶¶ (a), (b) & (f)-(i) of Count VII). Plaintiff is **DIRECTED** to file an amended complaint consistent with these findings within thirty (30) days

of the date of this Order.

**IT IS SO ORDERED.**

**DATED:   November 3, 2006.**

**s/ WILLIAM D. STIEHL**<br>**DISTRICT JUDGE**